WOODWARD'
vs
WOODWARD, &c.

---

CHANCERY.

## Woodward vs Woodward, &c.

### ERROR TO THE MONTGOMERY CIRCUIT.

Case 33.　　　　*Vendor and vendee. Lien. Notice. Purchaser.*

October 8.

A deed reciting to be for a consideration paid and secured to be paid, is constructive notice to a purchaser that a part of the consideration remains unpaid, (6 B. Monroe, 67; Ibid, 74.)

JUDGE BRECK delivered the opinion of the Court.

THE deed from John Woodward to Mitchell H. Woodward, recites that it was made "in consideration of the sum of eight hundred dollars, paid and secured to be paid by the said Mitchell H. Woodward, the receipt of one hundred and thirteen dollars of which is hereby acknowledged," &c.

This deed was duly recorded, and according to the case of *Honore's Ex'rs.* vs *Bakewell*, (6 *B. Monroe*, 67,) and

also of *Thornton* vs *Knox's Ex'r.*, (*Ibid*, 74,) was constructive notice to subsequent purchsers, that a portion of the purchase money remained unpaid at its execution.

For such unpaid residue a lien attached in favor of the vendor, unless it had been removed, waived or abandoned, which is not shown to have been the case. To the extent, therefore, that the purchase money from M. H. to John Woodward remained unpaid, the latter had a prior lien upon the land, which the Court below should have enforced.

Vendor has a lien for the consideration remaining unpaid, though a conveyance be made where a subsequent purchaser has constructive notice of the fact that it is unpaid.

It is manifest that the note exhibited by John Woodward upon M. H. Woodward for $687, was given for the residue of the purchase money, and there is no evidence that any other payments have been made thereon, except what are entered as credits upon the note. We are inclined to the opinion, in view of the whole record, that the credits should be applied as payments for the amount thereof, without interest, upon the note at the time when it became due. This opinion is based upon the supposition, that the credits as entered include interest upon the sums actually advanced up to that time. If this were not the case, interest should be allowed upon the credits from their date, as the advance payments were made at the request of John Woodward, and with an assurance that interest should be allowed. And as it is not entirely satisfactory that the interest is included in the nominal amount of the credits, the Court below, upon the return of the cause, will permit additional testimony in that respect, to be adduced.

In regard to the two notes executed by Fitzpatrick to M. H. Woodward, in part consideration of the purchase of the land in contest, by the former from the latter, it seems to this Court that Fitzpatrick's injunction was properly dissolved and his bill dismissed. The notes were executed and assigned to Yocum for the purpose of procuring a release of his mortgage upon the land. They were received by him in discharge of his claim upon M. H. Woodward, secured by the mortgage. They were assigned to him in the presence of Fitzpatrick, written in a manner to render them acceptable to him, Yocum, and with an assurance on the part of Fitzpatrick, that they

A purchaser executed his note to a mortgagee of the land purchased, as part of the consideration to extinguish the mortgage, a balance of the consideration was yet due from his vendor of the land, for which he held a lien, because such vendor would enforce that lien, that fact constituted no ground for the

would be promptly paid.   And he thereupon, and in con-
sideration thereof, released his mortgage, and the trade
between Fitzpatrick and Woodward was then consumma-
ted.   Under such circumstances, Fitzpatrick virtually
waived and abandoned any equity against the notes,
which might then exist, or might afterwards arise as be-
tween him and Woodward.   Yocum had at the time a
valid subsisting lien upon the land, and which Fitzpat-
rick undertook, by the notes in question, to discharge.
Yocum, therefore, cannot be affected by what would have
been an available equity in Fitzpatrick, had the notes re-
mained in the hands of Woodward, or had they been as-
signed under different circumstances.

The assignees of Yocum occupy the same attitude as
Yocum would have occupied had he retained the notes.

The bill of Fitzpatrick was, therefore, properly dis-
missed, and his injunction improvidently granted before
judgment upon the notes had been obtained, dissolved.

The decree, however, dismissing Fitzpatrick's bill,
was erroneous in directing that each party should pay their
own costs.   We can perceive no sufficient reason why
the defendants should not recover their costs.

The decree is reversed, upon both the original and
cross errors, and the cause remanded, that the bill of
Fitzpatrick may be dismissed at his cost, and his injunc-
tion dissolved.   And upon the bill of the complainant,
John Woodward, that his lien for the residue of his pur-
chase money due from M. H. Woodward may be en-
forced.

After the foregoing opinion was rendered, the counsel presented a
petition, asking a modification of the opinion, to which the Court on the
3d November, 1846, by Judge BRECK, made the following response:

As we are still of opinion that *the two notes* assigned
to Yocum were executed and assigned under such cir-
cumstances as to preclude Fitzpatrick from setting up
any equity against them on account of the lien upon the
land asserted by John Woodward, we perceive no ground
or principle, which would authorize a modification of the
opinion in behalf of Fitzpatrick, as sought by his counsel.

It is true that a portion of the purchase money, paid down by Fitzpatrick, was by arrangement between the parties, including Yocum, applied to the payment of Woodward's debts, for which Yocum was bound as security. This matter, however, is not relied upon in the pleadings; but even if it were, we perceive no ground upon which Fitzpatrick could render it available as against Yocum. The contract as to the time and mode of payment for the land, was made between Woodward and Fitzpatrick. The only point of difficulty as between them in regard to the trade, was the release of Yocum's mortgage. When that was done, and the amount was paid to redeem the land from the execution sale, it was unimportant to Fitzpatrick whether the residue was applied in payment of debts for which Yocum was bound or not; it was not diverted from the payment of the purchase money still due from Woodward to his father, for Fitzpatrick purchased under an impression that nothing was due on that account, or if there was, that there was no lien; in requiring Woodward, therefore, to apply a portion of the purchase money in discharge of debts, for which Yocum was his surety, Yocum did no injury to Fitzpatrick; nor did he in so doing, render himself liable to refund on account of the prior lien, which has been since asserted by John Woodward.

There is neither allegation nor proof of any misrepresentation, fraud or concealment on the part of Yocum in reference to the transaction in any way; nor was he, in our opinion, under any obligation, legal or equitable, to Fitzpatrick, to make good the title of Woodward. It may be a hard case upon Fitzpatrick, but as it has not resulted from any fault on the part of Yocum, he is entitled to no relief as against him, but must look to his vendor.

The petition for a modification of the opinion is, therefore overruled.

*Chiles and Hazlerigg* for plaintiff; *French and Peters* for defendants.